## In re TRACHSEL.

### (District Court, S. D. Ohio, W. D.  March 2, 1921.)

### No. 4282.

**Aliens ⬅68—Claim of exemption from draft operates as withdrawal of declaration of intention.**

> The claim of a neutral alien, who had declared his intention to become a citizen, to an exempt classification under the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), on the ground that he was still a citizen of his native country and obligated and willing to serve in its army if called, and his securing such exemption, though it was not authorized by the statute, *held* to operate as a withdrawal of his declaration of intention, which could not thereafter be made the basis of a petition for citizenship.

In the matter of the petition of Christian Trachsel for naturalization. Petition denied.

PECK, District Judge. This cause is heard upon the petition for naturalization of Christian Trachsel, a citizen of Switzerland. Upon September 24, 1914, he filed his declaration of intention to become a citizen of the United States and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly to the Swiss Confederation. On the 27th of December, 1917, he filed his questionnaire, in compliance with the regulations of the President, under the Selective Service Law (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), claiming an exempt classification known as Division F of Class V; that is, as a "resident alien (not an enemy) who claims exemption." He therein stated that he claimed exemption from military service because he was not a citizen; that he had taken out his first papers, and that he was willing to return to his native country and enter its military service. He presented to the draft board his affidavit:

> "To Whom It May Concern: In spite of the fact that I have taken out the first papers, I am still a citizen of Switzerland. I belong to the Swiss army, and I am liable to be called back to do military service there at any time; in case I should not answer the call, I would be considered a deserter and treated as such. Being a citizen of Switzerland, I am protected by the following treaty: 'Convention of Friendship, Commerce and Extradition between the United States and Switzerland concluded November 25, 1850. Article 11. The citizens of one of the two countries, residing or established in the other, shall be free from personal military service.' [11 Stat. 589.] Therefore I hereby respectfully claim exemption from military service in the United States."

He appears to have been originally put in Class 1-A, as a single man without dependent relatives, subject to service. This classification appears to have been canceled and the classification aforesaid determined upon.

The Selective Service Act then in force was that of May 18, 1917, declaring the draft to be based upon liability to military service of all male citizens or male persons not alien enemies who had de-

clared their intention to become citizens, between the ages of 21 and 30 years, both inclusive. No exemption was provided in favor of declarants for citizenship who were natives of neutral nations having treaties with the United States such as that relied upon.

It has been repeatedly decided that, so far as the judicial branch of the government is concerned, the act of Congress superseded such a treaty, and the treaty did not have the effect of exempting alien declarants of such neutral nations, but that they were subject to the Selective Service Law. Ex parte Larrucea (D. C.) 249 Fed. 981; Summertime v. Local Board (D. C.) 248 Fed. 832; Ex parte Blazekovic (D. C.) 248 Fed. 327. Trachsel was, however, exempted by the local board, and its action is not under review. The question now is whether his claim for exemption upon the grounds stated, and his asserted willingness to return to his native country and serve in its army, operated as a withdrawal of his previous declaration of intention to become a citizen of the United States.

It is to be noted that the Selective Service Law was subsequently modified July 9, 1918, by the proviso:

"That a citizen or subject of a country neutral in the present war who has declared his intention to become a citizen of the United States shall be relieved from liability to military service upon his making a declaration, in accordance with such regulations as the President may prescribe, withdrawing his intention to become a citizen of the United States, which shall operate and be held to cancel his declaration of intention to become an American citizen and he shall forever be debarred from becoming a citizen of the United States." Comp. St. Ann. Supp. 1919, § 2044b.

This amendment cannot, of course, control as to the effect of an exemption claim made prior to its enactment. However, if the act of the declarant in claiming exemption upon the ground stated was inconsistent with his declared intention to become a citizen of the United States, it must be held to operate as an abandonment.

A declarant for citizenship must so conduct himself in his relations with this government as to import a continuance of the intention which he has declared. This necessitates a continued readiness of mind on his part to comply with the laws of this country, including those imposing public duties upon aliens of his class. Willingness to abandon his previous rights as an alien resident and to comply with his legally prescribed duties as a declarant is a necessary concomitant of a sincere intention to renounce foreign allegiance and embrace American citizenship.

In Re Cameron (D. C.) 165 Fed. 112, it was held that a declaration will not support an application for admission to citizenship where, after making the declaration, the applicant returned to his native country with the intention of remaining there, and voted and otherwise participated in its local affairs, and that such action operated as an abandonment of his declared intention. The court said:

"The statute contemplates continuous inhabitancy, after the first step is taken, up to and including the time of admission, during which the intention to become a citizen must in fact continue. An applicant cannot hold a divided allegiance, in part to his native country, to be resumed at will, and in part to that of his adoption, to be availed of at pleasure. He owes undivided

allegiance during the probationary period; otherwise, he could continue his relations with the country of his citizenship unto the day of his final proof, which would neither be within the spirit of the statute regarding residence nor within its provisions as to the bona fide intention to become a citizen."

It must be borne in mind that Trachsel not only claimed exemption, but announced his willingness to return to his native country and enter its military service. This statement was in the nature of an election. It was the expression of a desire to be relieved of his obligation to duty as a neutral alien declarant under the Selective Service Law, and of a preference, if need be, to do military service in the country of his birth. He stood upon his alien citizenship, and got thereby the exemption which he sought. His position was inconsistent with the intention which he had theretofore declared of renouncing his foreign allegiance and becoming a citizen of this country. The fact that he·may have received an exemption to which he was not entitled is immaterial. The present inquiry is whether his previously declared intention actually persisted at the time he made his exemption claim.

It is concluded that Trachsel, by seeking to be relieved of the obligation imposed upon him by the Selective Service Law to serve in the army of the United States, and by insisting upon and receiving exemption upon the ground of continuance of his foreign citizenship, abandoned his declaration of intention to become a citizen of the United States; and his petition must be, and is, dismissed.